### ARKANSAS BRIDGE CO. v. KELLY-ATKINSON CONST. CO.

(Circuit Court of Appeals, Eighth Circuit. July 11, 1922.)

No. 5894.

1. **Trial ⬤☞418—Failure to rule on demurrer to evidence tantamount to overruling demurrer.**

Court's failure to rule on demurrer to evidence at the close of plaintiff's evidence is tantamount to overruling the demurrer, and hence questions raised by the demurrer are not preserved for review.

2. **Appeal and error ⬤☞230, 231(1)—Errors, to be reviewable, must have been definitely and timely called to trial court's attention.**

Errors, to be reviewable, must have been definitely and timely called to the trial court's attention, in order that trial court be afforded a fair opportunity to pass on the matter, and correct its own errors, if any.

3. **Appeal and error ⬤☞274(6)—Exceptions to refusal of requests for finding of fact and conclusion of law held to preserve for review question as to construction of contract, but not as to sufficiency of evidence.**

In subcontractor's action against contractor for breach of contract, in which the only claim before the court was for damages on account of delay, exceptions to refusal of request for finding of fact "that by said contracts the plaintiff specifically agreed to assume all risk of loss or damage by reason of any delay on the part of the defendant, or" named railroad, and of request for conclusion of law that "by reason of said contracts plaintiff is not entitled to recover from the defendant in any sum for breach thereof," *held* to preserve for review on writ of error the question of whether the contract absolved the contractor from liability through delay caused by contractor or the railroad, but not the question of the sufficiency of the evidence to prove that the contractor or the railroad caused delay, or the question of the remoteness of damages.

⬤☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Contracts ⬡⟹299(2)—Contractor not released from liability to subcontractor for delay by provision of original contract.**

Where contract with railroad for construction of bridge provided that the contractor assumed all risk of loss or damage by reason of delay of railroad in furnishing materials, and subcontract, adopting the terms of the original contract "so far as applicable," required the steel work to be delivered by the contractor on cars in consecutive order for erection at certain points near the work, the subcontractor was entitled to recover from the contractor for delay caused by failure to deliver the steel work in consecutive order for erection, notwithstanding contractor's assumption of risk of loss by reason of delay in original contract.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by the Kelly-Atkinson Construction Company against the Arkansas Bridge Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Homer H. Berger, of Kansas City, Mo., and A. L. Berger, of Kansas City, Kan., for plaintiff in error.

John M. Zane and Charles F. Morse, both of Chicago, Ill., and Charles W. German, of Kansas City, Mo., for defendant in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. This is an action for breach of contract. Two items of damage are claimed in the petition, namely, $3,087.69 for a balance of the contract price due and $13,623.01 for losses caused through delay occasioned by defendant in failing to deliver material in "consecutive order for erection." While the answer denied any liability, defendant conceded, during trial, its liability upon the claim for balance of contract price to the amount of $1,376.24. Jury was waived. The court found for plaintiff as to both items, and allowed recovery for $9,499. Defendant has sued out its writ of error.

The assignments of error are grouped and presented under two points, which are: (1) That the contract absolved the bridge company from liability through delay; and (2) that the evidence failed to show any proximate legal damage on account of any breach through delay caused by the bridge company.

[1] The construction company claims that the above contentions were not so raised in the trial court as to be here reviewable. The bridge company relies upon an overruled demurrer offered at the close of plaintiff's evidence and upon refused requests for findings of fact and conclusions of law. When the demurrer to the evidence was presented at the close of plaintiff's evidence, the court stated that it was "in no position" to rule upon the demurrer at that time. The defendant proceeded to fully introduce its evidence and there was no ruling upon the above demurrer until, and in connection with, the entry of judgment. When the character of a demurrer to evidence of a plaintiff is considered, a failure to rule thereon, before introduction of proof by defendant, is tantamount to overruling the demurrer. The

vitality of such demurrer is lost, if the defendant proceeds with its evidence. Therefore this demurrer has preserved nothing for review.

The refused requests for findings and conclusions are as follows:

"The defendant requests the court to make the following findings of fact:

"1. Plaintiff is only entitled to recover from defendant the sum of $1,376.24, the balance due under the contracts.

"2. That under the contracts between the parties, submitted in evidence in this case, the plaintiff is bound thereby, and that by said contracts the plaintiff specifically agreed to assume all risk of loss or damage by reason of any delay on the part of the defendant, or the Terminal Railway Company.

"The defendant requests the court to make the following conclusions of law:

"1. That by reason of the agreement between the parties, on the trial of this case, plaintiff is entitled to recover from the defendant the sum of $1,376.24, with interest at 6 per cent. from the date of entry of judgment.

"2. That the plaintiff is bound by the terms of the contracts entered into with the defendant, and by reason of said contracts plaintiff is not entitled to recover from the defendant in any sum for breach thereof."

In denying these requests the court said:

"No. 1 is refused because it is conceived to mean the plaintiff is entitled to recover 'only' the sum mentioned."

[2, 3] The law requires that errors, to be reviewable, must have been definitely and timely called to the attention of the trial court, in order to afford that court a fair opportunity to pass upon the matter, and correct its own errors, if any. The purpose is to require counsel, at the proper time, to call the attention of the court to the claimed error with sufficient certainty and definiteness for the court to understand clearly the precise action of the court which is attacked, or the precise action of the court which is sought to be obtained. Whether this has been done in a particular instance depends upon the actual situation in the trial at the time. If the reviewing court can see that the matter was so raised in the trial as to present clearly to the mind of the trial court the same point that is urged on review, the ruling below is subject to review. At the time these requests were presented, and, in fact, as a part of the requests themselves, the claim for $1,376.24, a balance of contract price, was conceded and the only claim before the court was as to that on account of delay. As to that claim, the clear-cut request was to find that under the undisputed contract "the plaintiff specifically agreed to assume all risk of loss or damage by reason of any delay on the part of the defendant, or the Terminal Railway Company." The "conclusion of law" requested is directed to precisely and solely the same point.

Each of these asked the court to do the same thing, namely, to construe the contract between the parties as relieving defendant from liability for delay caused by it or by the Terminal Railway Company. With the issues then before the court, these requests presented a definite point to the court for its action. The exceptions to the refusals of these requests preserved that point for review. But they preserved that point only. The requests did not present any other point, such as the sufficiency of the evidence, or as to any other legal conclusion to be drawn from the facts. Therefore the plaintiff in error cannot here present for review the question of whether the delay was caused by ei-

ther it or the Terminal, or the question of the remoteness of the damage. The only point which can be considered upon this review is whether the court erred in refusing to construe the contract as relieving the bridge company from liability from the delay charged to have been caused by it.

A few days before the execution of this contract, the bridge company had made a contract with the Terminal Railway Company to erect certain structures, including a steel bridge and approaches over the Kaw river. The contract, here involved, was a subcontract under which the construction company was to construct for the bridge company the above bridge and approaches. This subcontract provided that the construction company should do this part of the work covered by the main contract at certain prices payable at specified stages of the construction. The main contract is referred to (called "original contract") and incorporated as a part of the subcontract, and the undertaking of the subcontractor is stated to be that it—

"undertakes and agrees, subject to the conditions hereinafter set forth, to do and perform each and every, all and singular, the things required or necessary to be done by said contractor [bridge company] in connection with the erection of said steel approaches and steel bridge over the Kansas river. All of said work to be done in strict accord with the requirements, terms, and provisions of said 'original contract,' Exhibit A, and plans and specifications which form a part thereof; said subcontractor also assumes and agrees to indemnify and hold harmless the contractor, and also the terminal company, its agents, servants, and employees, on account of all liability, risks, damage, and costs, which, under the terms of said 'original contract,' are assumed by the contractor, or are required therein to be assumed by subcontractors. Said subcontractor also hereby, for the benefit of the Terminal Company, as well as the contractor, makes all waiver with respect to mechanics' liens, railroad liens, or any other lien, required by said 'original contract' to be made either by the contractor or subcontractors. Each and all of the requirements, terms, and provisions (except prices) of said 'original contract,' Exhibit A, are to be taken and deemed to be the requirements, terms and provisions, so far as applicable, of this contract to the same extent as though incorporated herein and made the obligations of the parties hereto."

This subcontract contains no specific provision concerning delay. The provisions in the main contract, as to delays, are as follows:

"No Damages for Delays, etc. Should delay be occasioned by any act or omission of the company [Terminal Railway Company] by failure on the part of the company to procure all necessary rights of way, to procure the passage of necessary ordinances, or to furnish promptly any materials to be furnished by the company, by failure on the part of city authorities to complete necessary legal proceedings, or by any other cause or circumstances absolutely and entirely beyond the control of the contractor [bridge company], then the time for completion shall be extended for such period as such excepted cause shall have delayed completion, provided the contractor shall have made application to the chief engineer of the Terminal Company for an extension of time within five days after such cause shall have become operative, and the chief engineer shall have executed a written certificate stating the period of delay on account of which the contractor may be entitled to such extension of time, and no extension shall be granted, and no delay justified without such certificate. The contractor agrees to assume all risk of loss or damage by reason of any delay due to any of such causes, and hereby releases and discharges the company from any liability therefor, and also agrees at all times to indemnify and hold harmless the company from any liability therefor to the contractor, subcontractor, or others."

The subcontract provided that "all of the steel work therefor to be delivered [by the bridge company] on cars in consecutive order for erection," at certain points near the work.

[4] The damage sought here arose from delay caused by failure of the bridge company to so deliver the steel work "in consecutive order for erection." The question of construction of the contract, raised by the refused requests, is whether the above provision in the subcontract concerning delivery of steel work is controlled or affected by the provision in the main contract concerning delay. The second above quotation, from the main contract, expressly provides that the contractor assumes "all risk of loss or damage by reason of any delay due to any of such causes"; and among the "causes" referred to is "to furnish promptly any materials to be furnished by the company." This would seem a clear release of liability for delay from such cause unless this contract provision is affected by some provisions in the subcontract. That the subcontract was to govern where it conflicted with the main contract was clearly the intention of these parties for they provided, in the first above quotation from the subcontract, that the main contract was undertaken "subject to the conditions hereinafter set forth"; and that the terms of the main contract be deemed the terms of the subcontract "so far as applicable."

It is claimed by the construction company that the subcontract requirement to deliver steel work "in consecutive order for erection" takes delay from such a cause outside of the adopted provisions of the main contract. This contention is sound because the two provisions are inconsistent when viewed in the light of the facts and the knowledge of facts which must have been in the minds of the parties, when they incorporated the "consecutive order" of delivery provision in the subcontract. The complaint here is not simply that there was delay in delivering the material. It is that delay was caused by the failure to deliver the material "in consecutive order for erection." There is a vital difference. Economical construction of a bridge and approaches, such as here, requires that the construction proceed in a certain sequence. Otherwise, the entire orderly plan is upset, involving expenses in moving heavy construction machinery back and forth. If the material had been furnished in consecutive order, but its delivery, in that order, delayed, the situation and damages would have been different from those produced by failure to deliver in consecutive order, whether such delivery had been prompt or delayed. Both of these parties, familiar with construction problems, must have known the advantage, if not necessity, of receiving material "in consecutive order for erection." They had this in mind when the subcontract was made and the provision in question was put into that contract to secure to the subcontractor that very advantage. It was intended to be and did secure that right to the subcontractor.

The judgment should be and is affirmed.